MITSUBISHI ELECTRIC & ELECTRONICS USA, INC., Plaintiff v. DUKE POWER COMPANY, a division of DUKE ENERGY CORPORATION, and DUKE ENERGY CORPORATION, Defendants

No. COA02-105

(Filed 31 December 2002)

**Appeal and Error— appealability—interlocutory order—contract and tort claims distinct—no risk of separate verdicts**

Plaintiff's appeal was dismissed as interlocutory in an action arising from the provision of industrial electrical service where plaintiff appealed from a trial court order dismissing its contract claims as being within the exclusive jurisdiction of the Utilities Commission, finding that its tort claims were derivative of the contract claims, and staying the tort claims pending review by the Utilities Commission. Although plaintiff argued that a substantial right was affected in that there was a risk of inconsistent verdicts, the contract and tort claims address entirely separate issues. Moreover, plaintiff has preserved its objections and can appeal from the trial court's ultimate disposition of the entire controversy.

Appeal by plaintiff from judgment entered 22 October 2001 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 10 October 2002.

*Francis & Austin, P.L.L.C., by Charles T. Francis and Alan D. Woodlief, Jr., for plaintiff-appellant.*

*Parker, Poe, Adams & Bernstein L.L.P., by Irvin W. Hankins, III and James C. Thornton, for defendant-appellees.*

HUDSON, Judge.

Appellant Mitsubishi Electric & Electronics USA, Inc. ("MEUS") brought suit against the appellees ("Duke Power") in May 2001, seeking recovery of payments made for electrical services. In its complaint, MEUS asserted both breach of contract and tort claims. Duke Power then filed a motion to dismiss for lack of subject matter jurisdiction and, in the alternative, a stay pending review by the North Carolina Utilities Commission ("Utilities Commission"). In October 2001, the trial court granted Duke Power's motion to dismiss the contract claims for lack of subject matter jurisdiction. The court also concluded that the remaining claims were derivative of the contract claims and, accordingly, stayed the former pending a final decision by the Utilities Commission on the contract issues. MEUS appealed. For the reasons set forth below, we dismiss this appeal as interlocutory.

## BACKGROUND

### A.

In August 1997, Duke Power entered into a five-year electric service agreement with the predecessor of MEUS for the sale and delivery of up to 8300 kilowatts of electric service to a manufacturing plant in Durham, North Carolina. In late 1998, MEUS's predecessor and Duke Power renegotiated the 1997 agreement, reducing the contract obligation for service capacity to 1000 kilowatts. This renegotiation resulted in a new agreement, effective 21 January 1999, with a five-year term. On 1 July 2000, MEUS acquired the rights to the Durham plant and assumed performance of the 1999 agreement.

Among other things, the agreement provided that Duke Power would furnish, install, own, and maintain certain extra facilities beyond those typically furnished without cost. In return, MEUS would pay Duke Power an extra facilities charge of almost $20,000 per month, in addition to the monthly charge for electrical power and energy. The agreement also provided that all services to be rendered or performed were subject to the terms and conditions of Duke Power's rate schedule and service regulations, both approved by and on file with the Utilities Commission.

From January 1999 to March 2001, Duke Power provided electrical power under the agreement, and MEUS paid the monthly charge for electrical power and the monthly extra facilities charge. In early 2001, MEUS sought to sell the Durham plant and eventually reached an agreement to sell the property to Jersey Durham, LLC ("Jersey Durham"). After reaching agreement with Jersey Durham, MEUS informed Duke Power that it planned to sell the plant. MEUS requested that Duke Power provide it with an estimate of a "buyout price" that would satisfy MEUS's obligation under the five-year agreement.

In response, Duke Power calculated two options for the termination payment, one constituting a buyout of the remainder of the agreement and the other representing Duke Power's loss due to the early retirement of the extra facilities that Duke Power had installed. Under the buyout calculation, Duke Power asserted that MEUS owed it $885,818.81. Under the other calculation, Duke Power claimed that MEUS owed it $805,876. Duke Power permitted MEUS to choose the lesser of the two alternatives.

MEUS informed Duke Power that neither option was contained in the parties' agreement and, therefore, was not properly collectable. When Duke Power would not reduce either of its calculations, MEUS told Duke Power that it desired simply to continue performance under the agreement. Duke Power refused this offer and instead demanded that MEUS make the lump sum payment.

MEUS and Jersey Durham had contracted to close the sale on the Durham plant no later than 30 March 2001. Shortly before the closing date, Jersey Durham told MEUS that Duke Power had informed it that Duke Power would deny electric service to Jersey Durham at the Durham plant unless MEUS made the lump sum payment. Because it had to close the deal with Jersey Durham no later than 30 March 2001, and believing that it had no other choice, MEUS paid $805,876 to Duke Power under protest.

Following the closing of the sale, MEUS requested that Duke Power return that portion of its payment that exceeded the monthly extra facilities charge remaining under the agreement. Duke Power refused.

B.

MEUS brought suit against Duke Power in May 2001. MEUS asserted a claim for breach of contract, alleging that the payment

demanded and ultimately coerced by Duke Power was not provided for in the parties' agreement and that Duke Power's conduct in securing the payment breached its implied covenant of good faith and fair dealing. MEUS also claimed economic duress and sought restitution, on the grounds that Duke Power had exploited its monopoly, had exerted economic pressure, and had threatened to deny electric service to Jersey Durham with the intent of coercing MEUS to pay the lump sum payment. In addition, MEUS asserted claims for intentional interference with contractual relations, intentional misrepresentation, and unfair and deceptive acts and practices in contravention of Chapter 75 of the North Carolina General Statutes.

Duke Power moved to dismiss the lawsuit. It argued that the North Carolina Utilities Commission had exclusive jurisdiction over MEUS's claims. It also argued, in the alternative, that the court should stay the action pending review by the Utilities Commission of those issues over which the Commission had exclusive jurisdiction. The trial court agreed. It found that "[p]laintiff's contract claims seeking recovery of payments made to defendants for electrical services and for the termination of electrical services should be dismissed as they involve matters within the exclusive jurisdiction of the North Carolina Utilities Commission . . . Plaintiff cannot maintain these claims in Superior Court without first seeking relief from the North Carolina Utilities Commission." The court also found that MEUS's tort claims were derivative of the contract claims and, as such, should be stayed "pending a final decision by the North Carolina Utilities Commission regarding the dispute between the parties on rates and charges with respect to electrical services."

MEUS now appeals, asserting (1) that the Utilities Commission did not have exclusive jurisdiction over its claims and that the complaint should not have been dismissed and (2) that the tort claims were not derivative of the contract claims and that those claims should not have been stayed.

## ANALYSIS

Before we address these issues, we must decide whether MEUS's appeal is interlocutory and subject to dismissal. "An order or judgment is interlocutory if it is made during the pendency of an action and does not dispose of the case but requires further action by the trial court in order to finally determine the entire controversy." *Bartlett v. Jacobs*, 124 N.C. App. 521, 523, 477 S.E.2d 693, 695 (1996) (citation and quotation marks omitted), *disc. review denied*, 345 N.C.

340, 483 S.E.2d 161 (1997). A party generally has no right to appeal an interlocutory order. *Cox v. Dine-A-Mate, Inc.*, 129 N.C. App. 773, 775, 501 S.E.2d 353, 354, *disc. review denied*, 349 N.C. 355, 525 S.E.2d 449. An appeal is, however, permitted if (1) the order is final as to some but not all of the claims or parties, and the trial court certifies that there is no just reason to delay the appeal, N.C. R. Civ. P. 54(b); or (2) the trial court's decision deprives the appellant of a substantial right that would be lost absent immediate review, N.C. Gen. Stat. § 7A-27(d)(1).

Here, the trial court dismissed MEUS's contract claims but stayed the remaining claims. This is an interlocutory order. See *Turner v. Norfolk Southern Corp.*, 137 N.C. App. 138, 141, 526 S.E.2d 666, 669 (2000) ("When the trial court granted defendants' motion to dismiss the contract claim, the pending tort claim was not disposed of and the appeal is therefore interlocutory.") Thus, because there was no certification pursuant to Rule 54 of our rules of civil procedure, MEUS must demonstrate why a substantial right is at stake. *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994) (noting that the burden of establishing that a substantial right will be affected is on the appealing party).

The substantial right most often addressed by our courts is the right to avoid inconsistent verdicts created by separate trials on the same issues, *Rudisail v. Allison*, 108 N.C. App. 684, 686, 424 S.E.2d 696, 698, *disc. review denied*, 333 N.C. 575, 429 S.E.2d 572 (1993), an argument that MEUS, too, makes in its brief. However, we are not convinced that there is a risk of inconsistent verdicts here. The trial court's stay ensures that MEUS's contract claims will be determined by the Utilities Commission before the trial court adjudicates the tort claims on the merits. The contract dispute at issue concerns a payment that MEUS made to Duke Power for electrical services. Any determination of this dispute will involve a review of the electrical services agreement between the parties and various rate documents approved by and filed with the Utilities Commission. In contrast, the tort claims address entirely separate issues. Those claims seek compensatory and punitive damages for alleged tortious conduct by Duke Power, including statements allegedly made by Duke Power to a third party. The stay ensures that MEUS will try one set of claims before the Utilities Commission and another, distinct set of claims in the superior court, thus avoiding the possibility of inconsistent verdicts on the same facts.

We point out, too, that we have dismissed interlocutory appeals in the past in cases where, as here, contract claims and tort claims can be litigated without producing inconsistent verdicts. In *Turner*, the estates of motorists who were killed in a car/train collision brought a negligence action against the railroad and an engineering firm. 137 N.C. App. at 138-39, 526 S.E.2d at 668. The plaintiffs alleged that the defendants had breached a common-law duty to provide adequate warning devices at the railroad crossing—a tort claim—and that the defendants had negligently performed a contract between the railroad and the North Carolina Department of Transportation to design and erect automatic warning devices within a certain time period—a contract claim. *Id.* at 139, 526 S.E.2d at 668. The trial court granted the defendants' motion for summary judgment on the contract claim but denied the motion as to the tort claim. On appeal, the plaintiffs argued that a substantial right was affected because separate trials on the tort claim and the contract claim could result in inconsistent verdicts on factual and other issues. *Id.* at 142, 526 S.E.2d at 670. We disagreed, explaining as follows:

> Plaintiff's tort claim is predicated on the railroad's duty to give reasonable and timely warning of the approach of a train to the crossing. To establish such a claim, the plaintiff must show that the crossing in question is peculiarly and unusually hazardous to those who have a right to traverse it.
>
> In contrast, plaintiff's contract claim centers on the performances due on a contract . . . . Plaintiff's claim focuses on the defendants' failure to act, and thus the defendants' breach of a contractual duty. The issues to be addressed in this claim would include plaintiff's status as a third party beneficiary to the contract, the duties imposed on defendants by the contract, and whether [the railroad] was negligent in its performance of the contract between itself and the [Department of Transportation]. Such issues are separate and distinct from those to be addressed in plaintiff's tort claim.

*Id.* at 143, 526 S.E.2d at 670. (internal citations and quotation marks omitted). In sum, the court held that the plaintiffs had failed to establish a substantial right that could not be "protected by a timely appeal from the trial court's ultimate disposition of the entire controversy" and dismissed the appeal. *Id.* at 143, 526 S.E.2d at 671.

Likewise in *Alexander Hamilton Life Insurance Company of America v. J&H Marsh & McClennan, Inc.*, 142 N.C. App. 699, 543

S.E.2d 898 (2001), the trial court granted summary judgment on the plaintiff's contract claims but denied summary judgment on the tort claims. This Court again found the plaintiff's appeal to be interlocutory; the two kinds of claims did not "present identical factual issues that create the possibility of two trials on the same issues. . . . Because a second trial would not require plaintiff to retry [any claims], there are no overlapping issues and the possibility of inconsistent verdicts does not exist." *Id.* at 701-02, 543 S.E.2d at 900.

Finally, dismissing this appeal as interlocutory does not prejudice MEUS. Because MEUS has preserved its objections to the trial court's ruling that it lacked subject matter jurisdiction to review the contract claims, MEUS will be able to continue to preserve such issues and, if necessary, appeal from the trial court's ultimate disposition of the entire controversy. *Turner*, 137 N.C. App. at 143, 526 S.E.2d at 671.

## CONCLUSION

For the reasons set forth above, we dismiss MEUS's appeal as interlocutory.

Dismissed.

Judges TIMMONS-GOODSON and CAMPBELL concur.