COASTAL PLAINS UTILITIES, INC., Plaintiff v. NEW HANOVER COUNTY, NEW HANOVER COUNTY BOARD OF COMMISSIONERS, in their official capacities; THE TOWN OF CAROLINA BEACH, a North Carolina Municipal Corporation; THE TOWN OF KURE BEACH, a North Carolina Municipal Corporation; T.A. LOVING, INC.; and ATLANTIC CONSTRUCTION, Defendants

No. COA03-525

(Filed 21 September 2004)

**1. Appeal and Error— appealability—partial summary judgment—substantial right affected—potential for inconsistent verdicts**

A partial summary judgment arising from the construction of a water and sewer system was interlocutory but affected a substantial right and was appealable because there was a potential for inconsistent verdicts.

**2. Easements— water system—no wrongful interference**

The location of a water and sewer system built by a county alongside an older, private system did not wrongfully interfere with the private company's nonexclusive easements and summary judgment was correctly granted for defendants.

**3. Utilities— UDPA—construction of new water system**

There was no basis for holding municipal defendants liable under the Underground Damage Prevention Act (which requires that utility owners be notified before excavations begin) in an action by the owner of an existing private water and sewer system arising from the construction of a new public system. The

companies doing the excavating were notified of the names of underground utility owners in the area and plaintiff was informed of the construction and asked to mark its lines.

### 4. Agency— utilities contractors—design of public water system—evidence of agency insufficient

Summary judgment for defendants was proper on a claim that New Hanover County was liable for damages to plaintiff's private water system caused by the design of a new public system. The County produced evidence that the work was done by independent contractors and defendant did not produce evidence of agency.

### 5. Negligence— utilities contractors—liability of county—respondeat superior—evidence insufficient

Summary judgment for defendants was proper on plaintiff's claims that New Hanover County was liable through respondeat superior for damages to plaintiff's private water system by contractors during construction of a new public system. Plaintiff did not offer evidence that the contractors were agents of the County.

### 6. Negligence— construction of new water system—not inherently dangerous

Summary judgment was correctly granted against plaintiff on its claim that the construction of a new public water system near plaintiff's private system was an inherently dangerous activity for which the County had a nondelegable duty of care. Plaintiff's injuries did not flow from the risk of contamination.

### 7. Trespass— construction of new water system—liability of county for contractor

Summary judgment was properly granted against a private water company on its trespass claim against the County resulting from construction of a new public water system.

### 8. Counties— liability for contractors—notice of statutory violation

The theory that a county could be held liable for the acts of contractors if it had notice that the contractors were violating a statute was not available under the circumstances of this case. The Court of Appeals declined reasoning that would impose additional duties not specified in the Underground Damage Prevention Act.

COASTAL PLAINS UTILS., INC. v. NEW HANOVER CTY.

[166 N.C. App. 333 (2004)]

**9. Cities and Towns— construction of new water system— agency—evidence insufficient**

   Summary judgment was granted correctly for municipalities on claims for damage to a private water system during construction of a new system where the new system was built by contractors for the county. Plaintiff contended that the municipalities were liable as beneficiaries but failed to cite supporting authority, and argued liability under respondeat superior but failed to offer sufficient evidence of agency. Participation by the towns in meetings with the contractors about problems arising from the construction was precisely the watchfulness required of a town when a major construction project impacts the town and does not give rise to a principle-agent relationship.

**10. Nuisance— construction of public water system—ownership interest in private system—issue of fact**

   The trial court should not have granted summary judgment for Carolina Beach on a nuisance claim by the owner of a private water system arising from the construction of a new public system. Carolina Beach's argument for summary judgment was that plaintiff's pleading and evidence did not show the necessary property interest, but, viewed in the light most favorable to plaintiff, there was evidence sufficient to raise an issue of material fact.

**11. Appeal and Error— absence of argument or authority— judgment not set aside**

   The Court of Appeals declined to set aside a summary judgment in the absence of any argument or authority.

Appeal by plaintiff from orders and judgment entered 2 December 2002 by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 17 March 2004.

*Hunton & Williams, by Edward S. Finley, Jr., for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Mark A. Davis, Douglas W. Hanna and Matthew S. Healey, for defendants-appellees New Hanover County and New Hanover County Board of Commissioners.*

*J. Albert Clyburn, P.L.L.C., by J. Albert Clyburn, for defendant-appellee The Town of Carolina Beach.*

*Andrew A. Canoutas, for defendant-appellee The Town of Kure Beach.*

*Taylor, Penry, Rash & Riemann, PLLC, by Neil A. Riemann, for defendant-appellee T.A. Loving, Inc.*

*No brief filed on behalf of defendant-appellee Atlantic Construction.*

GEER, Judge.

This appeal arises from the construction of a new water and sewer system in Carolina Beach and Kure Beach alongside existing water lines owned by plaintiff Coastal Plains Utilities, Inc. ("Coastal"). Coastal appeals from orders granting summary judgment on all claims to defendants New Hanover County and the New Hanover County Board of Commissioners ("the County"), Kure Beach, and Carolina Beach and granting partial summary judgment to defendant T.A. Loving, Inc. ("Loving") on its claims for wrongful interference with easement and nuisance. We hold that the evidence failed to establish a genuine issue of material fact regarding the municipal defendants' direct liability for plaintiff Coastal's damages and failed to demonstrate that the contractors involved in the project were agents of the municipal defendants so as to support liability based on *respondeat superior*. Coastal also failed to present sufficient evidence to warrant reversing the grant of partial summary judgment to Loving. With respect, however, to Coastal's claim of nuisance asserted against Carolina Beach, we hold that the trial court erred in granting partial summary judgment.

Facts

The evidence, viewed in the light most favorable to Coastal, tended to show the following. Since 1966, Coastal has provided water service to customers in the Wilmington Beach and Hanby Beach communities, using a system that was originally constructed in the 1950s. In 2000, the Wilmington Beach area was annexed by the neighboring town of Carolina Beach and the Hanby Beach area was annexed by the neighboring town of Kure Beach.

In 1997, New Hanover County entered into an agreement with the towns of Carolina Beach and Kure Beach, under which the County agreed to fund and construct a new sewer system for the towns. The agreement was amended in 1999 to include a water distribution system to be installed at the same time. Upon completion of the con-

struction, the towns would operate and maintain the water and sewer system, charging a usage fee to repay the debt incurred by the County to fund the project. After the debt was satisfied, the County would convey the system to the towns.

Development of the new water and sewer system began in October 2000. The County contracted with Engineering Systems, P.A. to design the system and develop specifications and construction documents for the project. Once the plans were complete, the County contracted with Loving to construct the portion of the system serving Carolina Beach and with Atlantic Construction ("Atlantic") to construct the portion of the system serving Kure Beach.

Actual construction of the system began in late 2000. The plans and specifications prepared by Engineering Services required the contractors to use the "open trench" method of construction, which involves digging an open trench in which the utility lines are installed. During construction of the new system, the contractors inflicted numerous cuts to Coastal's lines. The damage to the lines disrupted service to Coastal customers. In some instances, the contractors repaired the broken steel lines with plastic PVC pipe, which according to Coastal, undermined the mechanical integrity of its lines.

In addition, Carolina Beach had previously begun using two wells close to Coastal's existing wells. During the same period as the construction, Coastal began to suspect that Carolina Beach's wells were adversely affecting its wells. According to Coastal's expert witness, as a result of the Carolina Beach wells, Coastal was able to draw less water from its wells, resulting in water pressure problems for Coastal's customers.

Responding to complaints from Coastal's customers, the North Carolina Utilities Commission began monitoring Coastal's system in 2000. On 13 July 2001, the Utilities Commission issued an order finding that Coastal had "abandoned its system" and that an emergency existed with respect to Coastal's water system. On 16 July 2001, Superior Court Judge Benjamin Alford appointed Carolina Beach and Kure Beach as emergency operators of Coastal's water system and ordered Coastal to deliver all billing information for its customers to the towns. According to the record before this Court, Coastal has not operated its system since.

On 2 July 2001, Coastal filed a complaint asserting claims for wrongful interference with easement, trespass to chattels, and negli-

gence against the County, Carolina Beach, Kure Beach, Loving, and Atlantic.[1] In addition to damages, Coastal sought a temporary restraining order, a preliminary injunction, and a permanent injunction preventing defendants from proceeding with the construction. Also on 2 July 2001, Coastal's request for a temporary restraining order and preliminary injunction was granted with the proviso that construction could continue if defendants complied with certain orders of the court. On 4 January 2002, Coastal filed an amended complaint alleging an additional claim against Carolina Beach for nuisance and an injunction preventing Carolina Beach from operating its wells in an unreasonable manner.

All parties filed motions for summary judgment. The matter was heard during the 4 November 2002 civil session of New Hanover County Superior Court. On 2 December 2002, the trial court granted summary judgment in favor of the County, Kure Beach, and Carolina Beach on all claims and entered partial summary judgment in favor of Loving and Atlantic on the claims of wrongful interference with easement and nuisance. The trial court denied Coastal's motion for partial summary judgment on its claim of wrongful interference with easement. From those orders, Coastal filed notice of appeal to this Court on 7 December 2002. Coastal has since settled its claims against Atlantic. At the time of this appeal, Coastal's claims against Loving for trespass to chattels and negligence are still pending.

## Motions to Dismiss the Appeal

[1] At the outset, we must address the motions to dismiss this appeal as interlocutory filed by the County, Carolina Beach, and Kure Beach (collectively, "the municipal defendants"). We agree that the appeal is interlocutory, but hold that the appeal involves a substantial right and is, therefore, properly before us.

When an order resolves some, but not all, of the claims in a lawsuit, any appeal from that order is interlocutory. *Mitsubishi Elec. & Elecs. USA, Inc. v. Duke Power Co.*, 155 N.C. App. 555, 559, 573 S.E.2d 742, 745 (2002). Because claims against Loving are still pending, this appeal is interlocutory. An interlocutory appeal is permissible only if (1) the trial court certified the order under Rule 54 of the

---

1. The New Hanover County Commissioners were sued solely in their official capacity. An official capacity suit brought against a government official is "merely another way of pleading an action against the governmental entity." *Mullis v. Sechrest*, 347 N.C. 548, 554, 495 S.E.2d 721, 725 (1998). Therefore, references to "the County" in this opinion also encompass the County Commissioners.

Rules of Civil Procedure, or (2) the order affects a substantial right that would be lost without immediate review. *Embler v. Embler,* 143 N.C. App. 162, 164-65, 545 S.E.2d 259, 261 (2001). Since the orders at issue in this appeal do not contain a Rule 54 certification, we must determine whether the orders affect a substantial right of plaintiff that cannot be preserved in the absence of an interlocutory appeal.

Our Supreme Court has observed that " 'the right to avoid the possibility of two trials *on the same issues* can be . . . a substantial right.' " *Green v. Duke Power Co.,* 305 N.C. 603, 608, 290 S.E.2d 593, 596 (1982) (quoting *Survey of Developments in North Carolina Law,* 1978, 57 N.C. L. Rev. 827, 908 (1979)). *See also Bernick v. Jurden,* 306 N.C. 435, 439, 293 S.E.2d 405, 408 (1982) ("[B]ecause of the possibility of inconsistent verdicts in separate trials, the order allowing summary judgment for fewer than all the defendants in the case before us affects a substantial right."). The Court explained further in *Green* that "[o]rdinarily the possibility of undergoing a second trial affects a substantial right only when the same issues are present in both trials, creating the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue." *Green,* 305 N.C. at 608, 290 S.E.2d at 596. This Court has interpreted the language of *Green* as creating a two-part test "requiring a party to show that (1) the same factual issues would be present in both trials and (2) the possibility of inconsistent verdicts on those issues exists." *N.C. Dep't of Transp. v. Page,* 119 N.C. App. 730, 735-36, 460 S.E.2d 332, 335 (1995).

The municipal defendants argue that there is no danger of inconsistent verdicts here because the Coastal and Loving trial would not involve the same factual issues as any subsequent trial against the municipal defendants. They cite *Jarrell v. Coastal Emergency Servs. of the Carolinas, Inc.,* 121 N.C. App. 198, 464 S.E.2d 720 (1995), in which this Court held that because the first trial would be on liability, while the sole issue for the second trial would be whether a master-servant relationship existed such that the defendant could be held liable under a *respondeat superior* theory, the plaintiff's claims did not present identical factual issues that created the possibility of inconsistent verdicts. *Id.* at 200, 464 S.E.2d at 722-23.

Here, however, because Coastal asserts claims based on direct liability as well as *respondeat superior,* subsequent trials would not be limited to the issue whether a master-servant or principal-agent relationship existed. Moreover, even as to the *respondeat superior* claims, defendants have acknowledged that they would seek to retry

the issues of causation and damages, thus creating a risk of inconsistent verdicts on those issues. For example, in the trial against Loving, a jury could find that Coastal's damages resulted from the new construction or the Carolina Beach wells, while the jury in a second trial could find that the damages arose out of unrelated deterioration to the Coastal system. In addition, Loving would argue at its trial that any damage was the result of the design of the system and was not due to any negligence of Loving. The municipal defendants would, however, likely argue in any subsequent trial that the damage was caused by Loving. Accordingly, we hold that because there is a potential for inconsistent verdicts, the orders appealed from affect a substantial right and are immediately appealable.

### Standard of Review

The North Carolina Rules of Civil Procedure provide that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). In deciding the motion, " 'all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion.' " *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (quoting 6 James W. Moore et al., *Moore's Federal Practice* § 56-15[3], at 2337 (2d ed 1971)).

The party moving for summary judgment has the burden of establishing the lack of any triable issue. *Collingwood v. General Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). Once the moving party meets its burden, then the non-moving party must "produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial." *Id.* In opposing a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." N.C.R. Civ. P. 56(e).

On appeal, this Court's task is to determine, on the basis of the materials presented to the trial court, whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. *Oliver v. Roberts*, 49 N.C. App. 311, 314, 271 S.E.2d 399, 401 (1980), *cert. denied*, 276 S.E.2d 283 (1981). A trial court's ruling on a motion for summary judgment is reviewed

**COASTAL PLAINS UTILS., INC. v. NEW HANOVER CTY.**

[166 N.C. App. 333 (2004)]

*de novo* as the trial court rules only on questions of law. *Va. Elec. & Power Co. v. Tillett,* 80 N.C. App. 383, 384-85, 343 S.E.2d 188, 191, *cert. denied,* 317 N.C. 715, 347 S.E.2d 457 (1986).

<u>Wrongful Interference with Easement</u>

[2] Coastal first argues that the present location of the County's water and sewer system wrongfully interferes with Coastal's recorded easements by interfering with Coastal's access to its own system for purposes of repair and maintenance and by risking contamination of Coastal's water or more damage to Coastal's system in the future.[2] Coastal attempts to hold each of the defendants liable for the wrongful interference.

Coastal has acknowledged that its easements were nonexclusive. When an easement is nonexclusive, the grantor may later grant similar easements to others, including the general public. *Commercial Fin. Corp. v. Langston,* 24 N.C. App. 706, 712, 212 S.E.2d 176, 180, *cert. denied,* 287 N.C. 258, 214 S.E.2d 429 (1975). In that case, to make out a claim for wrongful interference with easement, a party must show "an interference inconsistent with plaintiff's easement." *Carolina Power & Light Co. v. Bowman,* 229 N.C. 682, 686, 51 S.E.2d 191, 194 (1949). The mere invasion or entry onto an easement is insufficient to prove interference. Instead, the use must "materially impair or unreasonably interfere with the exercise of the rights granted in the easement." *Carolina Cent. Gas Co. v. Hyder,* 241 N.C. 639, 642, 86 S.E.2d 458, 460 (1955). In addition, "once an interference with an easement has been shown, in order to make out a cause of action a plaintiff bears the burden of proving that the interference injured his interests in some way." *Century Communications, Inc. v. The Housing Authority of the City of Wilson,* 313 N.C. 143, 148-49, 326 S.E.2d 261, 265 (1985).

The undisputed evidence indicates Coastal has not operated its system since July 2001 when Carolina Beach and Kure Beach were appointed as emergency operators of the system. On 7 August 2001, the Utilities Commission entered an order providing that "the appointment of the emergency operators shall remain effective until further order of the Commission." The record contains no order of the Commission relieving the emergency operators. On 6 May 2002, Ralph B. Harper, Environmental Engineer with the Public Water Supply Section of the Division of Environmental Health, notified

---

2. We address below Coastal's arguments regarding damage to its system inflicted during the construction.

Coastal that Coastal's wells had been "deleted from [the Division's] inventory as sources of water because they had not been used since July of 2001" and, at that time, had failed state inspections. Coastal's President Allie Moore testified in August 2002 that Coastal had been "relieved of that water works[,]" he was "out of business[,]" and "[t]he system is destroyed."

In sum, Coastal has presented no evidence that (1) it is still operating its system and using its easements, (2) that prior to the emergency operator order the location (as opposed to the construction) of the new water and sewer system actually interfered with Coastal's easement, or (3) that it will be operating its system in the future. Coastal has offered no explanation and we fail to see how there can be a material interference with Coastal's easements causing any injury to Coastal if Coastal is no longer operating its water system. Therefore, summary judgment was properly granted as to this claim.

### Liability Under the Underground Damage Prevention Act

[3] Coastal argues that the municipal defendants failed to comply with the Underground Damage Prevention Act ("the UDPA"), N.C. Gen. Stat. §§ 87-100 (2003) *et seq.* With respect to the County, Coastal argues: "[The County] also is liable under Article 8 of Chapter 87 of the General Statutes because it planned the excavation and failed to comply with its responsibilities under that Article. [The County] owns the encroaching facilities." As for Kure Beach and Carolina Beach, Coastal claims that they breached their duties under N.C. Gen. Stat. § 87-105, as "person[s] financially responsible" for the excavation. Under the statute, " '[p]erson financially responsible' means that person who ultimately receives the benefits of any completed excavation activities . . . ." N.C. Gen. Stat. § 87-101(7).

This Court has held that the UDPA establishes a duty of care owed by persons engaged in excavation to owners of underground utilities. *Continental Tel. Co. of N.C. v. Gunter*, 99 N.C. App. 741, 743-44, 394 S.E.2d 228, 230, *disc. review denied*, 237 N.C. 633, 399 S.E.2d 325 (1990). The UDPA provides in N.C. Gen. Stat. § 87-102(a) (emphasis added) that "before commencing any excavations . . . in private easements of a utility owner, *a person planning to excavate* shall notify each utility owner having underground utilities located in the proposed area to be excavated, either orally or in writing, not less than two nor more than 10 working days prior to starting, of his intent to excavate." The statute further requires the "person financially responsible" for the excavation to provide to "the person responsible

for doing the excavating" the names of all underground utility owners in the area of the proposed excavation. N.C. Gen. Stat. § 87-105. Another section places additional duties on "each person excavating." N.C. Gen. Stat. § 87-104.

The County concedes it was the "person financially responsible" for the excavation and that its duty as such was to provide "the person responsible for doing the excavating" with the names of utility owners in the area being excavated. Coastal has argued no basis for any claim that the municipal defendants were the "person[s] excavating" and subject to N.C. Gen. Stat. § 87-104. We need not decide whether Kure Beach and Carolina Beach were "person[s] financially responsible" because the undisputed evidence shows that the people doing the excavation—Loving and Atlantic—received the notification required by N.C. Gen. Stat. § 87-105. In addition, consistent with N.C. Gen. Stat. § 87-102, the record shows that there was a meeting between the County, the contractors, and Coastal and that Coastal was advised of the construction and was asked to mark the lines where its pipes lay. The record contains no basis for holding the municipal defendants liable under the UDPA.

### Claims Against the County Based on Damage to Coastal's System

Coastal contends that the County is directly liable for the damage to Coastal's water system because the County designed the project in a way that necessarily resulted in damage to Coastal's system. Coastal also contends that the County is liable for damage resulting from tortious conduct of the contractors Loving and Atlantic during the construction of the new system based on *respondeat superior* and because any duty was nondelegable. We will address each of these claims individually.

### A. Liability Based on Design of the System

[4] According to Coastal, it "has stated a claim against [the County] because [the County] designed the new systems so as to interfere with [Coastal's]. The specifications, drawings and contracts were issued in [the County's] name." The undisputed evidence shows, however, that the County did not design the system itself, but rather contracted with an engineering firm, Engineering Services, P.A., to design the system. Wyatt Blanchard, the County Engineer, explained in his unrefuted affidavit that "[the County] does not have the staff to design and construct the proposed sewer system for the Wilmington/Hanby Beach area. Therefore, the role of [the County]

was to fund the project and contract with companies to perform the necessary work. . . . On April 15, 1998, [the County] entered into a contract with Engineering Services, P.A. to design, develop specifications and construction documents for the project intended to provide public sewer to the areas known as Carolina Beach and Kure Beach."

In discussing the County's insurance policy and its exclusion of claims arising out of the activities of professionals, including architects and engineers, Coastal asserts in its brief that "[Coastal] makes no claim against any such professional on [the County's] staff. [Coastal's] claims are against [the County] as owner of the project and as employer of the agents that injured [Coastal's] property." This assertion appears to disclaim any contention that the County's staff improperly designed the system.

We assume, although Coastal's brief is not clear on this point, that Coastal is contending that the County is liable for the acts of Engineering Services in designing the system. The general rule is that a company is not liable for the torts of an independent contractor committed in the performance of the contracted work. *Page v. Sloan*, 12 N.C. App. 433, 439, 183 S.E.2d 813, 817 (1971), *aff'd*, 281 N.C. 697, 190 S.E.2d 189 (1972). The issue before this Court is, therefore, whether Coastal submitted sufficient evidence to give rise to a genuine issue of material fact on the question whether Engineering Services was an agent of the County or an independent contractor.

As this Court has previously stated, "[t]here are two essential ingredients in the principal-agent relationship: (1) Authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent." *Vaughn v. N.C. Dep't of Human Resources*, 37 N.C. App. 86, 91, 245 S.E.2d 892, 895 (1978), *aff'd*, 296 N.C. 683, 252 S.E.2d 792 (1979). More recently, this Court has confirmed that " '[t]he critical element of an agency relationship is the right of control . . . .' " *Wyatt v. Walt Disney World, Co.*, 151 N.C. App. 158, 166, 565 S.E.2d 705, 710 (2002) (quoting *Williamson v. Petrosakh Joint Stock Co.*, 952 F. Supp. 495, 498 (S.D. Tex. 1997)). Specifically, " 'the principal must have the right to control *both the means and the details of the process* by which the agent is to accomplish his task in order for an agency relationship to exist.' " *Id.* (quoting *Williamson*, 952 F. Supp. at 498; emphasis added). *See also Hylton v. Koontz*, 138 N.C. App. 629, 636, 532 S.E.2d 252, 257 (2000) (internal quotation marks omitted) (whether or not a party has retained the right of control "as to details" is the "vital test" in determining

COASTAL PLAINS UTILS., INC. v. NEW HANOVER CTY.

[166 N.C. App. 333 (2004)]

whether an agency relationship exists), *disc. review denied*, 353 N.C. 373, 546 S.E.2d 603 (2001); *Hoffman v. Moore Regional Hosp.*, 114 N.C. App. 248, 251, 441 S.E.2d 567, 569 (the principal must have "control and supervision over the details of the [agent's] work"), *disc. review denied*, 336 N.C. 605, 447,S.E.2d 391 (1994). An independent contractor, by contrast, is one who " 'exercises an independent employment and contracts to do certain work according to his own judgment and method, without being subject to his employer except as to the result of his work.' " *McCown v. Hines*, 353 N.C. 683, 686, 549 S.E.2d 175, 177 (2001) (quoting *Youngblood v. North State Ford Truck Sales*, 321 N.C. 380, 384, 364 S.E.2d 433, 437 (1988)).

The contract between Engineering Services and the County provided that Engineering Services was an independent contractor. While the parties' label on their relationship is not controlling evidence, *Williams v. ARL, Inc.*, 133 N.C. App. 625, 629, 516 S.E.2d 187, 191 (1999), Coastal has not offered any evidence suggesting that Engineering Services was anything but an independent contractor. Indeed, Coastal does not address the relationship at all other than to describe Engineering Services as the County's "outside engineering consultant[.]" In addition, Gilbert Dubois, the "Construction Observer" employed by Engineering Services, stated in an unrefuted affidavit: "No agent or employee of the County supervised me or directed my hours of operation."

Since the County supported its motion for summary judgment with evidence that Engineering Services was an independent contractor, the burden shifted to Coastal to present evidence of agency. It failed to do so. Without evidence of agency, the County cannot be held liable based on the conduct of Engineering Services. Accordingly, summary judgment was proper on Coastal's claims to the extent they are based on the design of the new water and sewer system.

## B. Liability Based on the Construction of the System

### 1. Respondeat Superior

[5] With respect to damages arising out of Loving's and Atlantic's construction of the system (as opposed to the design of the system), we must determine if Coastal offered sufficient evidence to raise an issue of fact regarding whether Loving and Atlantic were agents of the County or independent contractors. The County again points to the provision in the parties' contracts stating that the relationship

was one of independent contractors. Because this label is not controlling, we look to the factors traditionally reviewed by our courts in determining whether a person is an independent contractor: whether the person (1) is engaged in an independent business, calling, or occupation; (2) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (3) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (4) is not subject to discharge because he adopts one method of doing the work rather than another; (5) is not in the regular employ of the other contracting party; (6) is free to use such assistants as he may think proper; (7) has full control over such assistants; and (8) selects his own time. *McCown*, 353 N.C. at 687, 549 S.E.2d at 177-78. "No particular one of these factors is controlling in itself, and all the factors are not required. Rather, each factor must be considered along with all other circumstances to determine whether the [person] possessed the degree of independence necessary for classification as an independent contractor." *Id.*, 549 S.E.2d at 178.

Having reviewed the evidence submitted by the parties in light of these factors, we hold that Coastal has failed to submit sufficient evidence to give rise to an issue of fact on the question of agency. The undisputed evidence reveals that each of the contractors is engaged in the business of construction, independent from the County. In constructing the systems in accordance with Engineering Services' plans, the agents and employees of the contractors exercised independent use of their skill, knowledge, and training. The contractors determined their own hours of operation and hired their own employees and the County had no right to control how they divided up work among the employees and subcontractors. In addition, the contracts provided that each of the contractors would construct a specified portion of the water/sewer system at a fixed price: Loving was paid $3,307,537.00 to construct the system in Carolina Beach, and Atlantic was paid $1,406,648.50 to construct the system in Kure Beach.

Coastal does not address the factors set out in *McCown*, but rather argues that because the contractors were required to construct the system in accordance with plans and specifications provided by the County defendants, the contractors were agents of the County defendants. The Supreme Court has long rejected such a contention. The Court stated in *Economy Pumps, Inc. v. F. W. Woolworth Co.*, 220 N.C. 499, 502, 17 S.E.2d 639, 641 (1941):

> When a contractor has undertaken to do a piece of work, according to plans and specifications furnished, . . . , this relation

of independent contractor is not affected or changed because the right is reserved for the engineer, architect or agent of the owner or proprietor to supervise the work to the extent of seeing that the same is done pursuant to the terms of the contract.

*See also McCown*, 353 N.C. at 688, 549 S.E.2d at 178 (instructions from owner requiring certain placement of shingles were "decisions within the control of the owner" and did not alter the independent contractor relationship); *Oldham & Worth, Inc. v. Bratton*, 263 N.C. 307, 313, 139 S.E.2d 653, 658 (1965) (person was an independent contractor when his "contractual obligation was to construct [defendant's] residence in accordance with the Drawings and Specifications" and defendant "was concerned only with the final result, namely, the construction and completion of the residence in accordance with the Drawings and Specifications"); *Ramey v. Sherwin-Williams Co.*, 92 N.C. App. 341, 345, 374 S.E.2d 472, 474 (1988) ("[T]he fact that a worker is supervised to the extent of seeing that his work conforms to plans and specifications does not change his status from independent contractor to employee.").

As this Court has observed:

"An owner, who wants to get work done without becoming an employer, is entitled to as much control of the details of the work as is necessary to ensure that he gets the end result from the contractor that he bargained for. In other words, there may be a control of the quality or description of the work itself, as distinguished from control of the person doing it, without going beyond the independent contractor relation."

*Cook v. Morrison*, 105 N.C. App. 509, 514, 413 S.E.2d 922, 925 (1992) (quoting 1C A. Larson, *The Law of Workmen's Compensation* § 44.21 (1991)). Thus, in *Ramey*, 92 N.C. App. at 345, 374 S.E.2d at 474, this Court found that the worker was an independent contractor even though he was required to follow a blueprint and was visited at the job site once a week by an employee of defendant to make sure there were no problems. Similarly, in *Cook*, 105 N.C. App. at 514, 413 S.E.2d at 925, "[t]hat the defendant occasionally gave instructions and made suggestions to [the worker] concerning engineering requirements set out in the blueprints for the sewer system [did] not create an employer-employee relationship." Here, the fact that the contractors were required to construct the system in accordance with Engineering Services' plans and specifications did not transform the contractors into agents of the County.

Coastal also points to the purported supervision of Loving and Atlantic by Gilbert Dubois, undisputedly an employee of Engineering Services and not of the County. Coastal cites no authority suggesting that a company can be converted from an independent contractor into an agent as a result of supervision by a second independent contractor. Moreover, Dubois' uncontradicted affidavit states: "At no time was I authorized to control or supervise the independent contractors, T.A. Loving and Atlantic Construction. My involvement was limited to observation and inspection. It was not my job to direct the contractors."

Because Coastal has failed to offer evidence demonstrating that the contractors were agents of the County, summary judgment was also proper as to Coastal's claims to the extent they are based on *respondeat superior.*

### 2. Nondelegable Duty

[6] Alternatively, Coastal argues that the County can be held liable for the acts of Loving and Atlantic even if they are independent contractors. Although one who employs an independent contractor is generally not liable for the contractor's acts, our Supreme Court has recognized an exception when the employer has hired the independent contractor to perform an inherently dangerous activity. *Woodson v. Rowland*, 329 N.C. 330, 352, 407 S.E.2d 222, 235 (1991). "One who employs an independent contractor to perform an inherently dangerous activity may not delegate to the independent contractor the duty to provide for the safety of others[.]" *Id.*

To establish a breach of the nondelegable duty, a plaintiff must show: (1) the activity causing the injury was, at the time of the injury, inherently dangerous, (2) the employer knew or should have known, at the time of the injury, of the inherent dangerousness of the activity, (3) the employer failed to take reasonable precautions or ensure that such precautions were taken to avoid the injury, and (4) this negligence was a proximate cause of the plaintiff's injuries. *O'Carroll v. Texasgulf, Inc.*, 132 N.C. App. 307, 312, 511 S.E.2d 313, 317-18, *disc. review denied*, 350 N.C. 834, 538 S.E.2d 198 (1999). In *Woodson*, our Supreme Court held that "[i]t must be shown that because of [the circumstances surrounding the activity], the [activity] itself presents 'a recognizable and substantial danger inherent in the work, as distinguished from a danger collaterally created by the independent negligence of the contractor.'" *Woodson*, 329 N.C. at

356, 407 S.E.2d at 237 (quoting *Evans v. Elliott*, 220 N.C. 253, 259, 17 S.E.2d 125, 128 (1941)).

Coastal contends that the water and sewer project was inherently dangerous because of the potential for contamination of the water delivered to consumers. We need not determine whether Loving and Atlantic were performing an inherently dangerous activity because Coastal's injuries and damages do not arise out of the risk of contamination. Coastal cannot demonstrate that its damages were caused by the County's breach of any nondelegable duty of safety.

[7] Coastal also argues that the employer of an independent contractor "may be liable for trespass to land or chattels if the independent contractor's trespass was committed at the direction of the employer, or where the work necessarily involved a trespass (41 Am. Jur. § 50) or where trespass is likely to occur. *Id.*; Restatement, Torts 2d, § 427B." Coastal relies upon the design of the new water and sewer system in arguing that the project was likely to result in a trespass. As discussed above, however, independent contractor Engineering Services designed the project and not the County. *Cf. Woodson*, 329 N.C. at 358, 407 S.E.2d at 238 (holding that a developer is not liable for actions of subcontractor based on a nondelegable duty when it lacks expertise in construction and justifiably relies entirely on the expertise of its general contractor). Coastal has not pointed to any evidence that the project, if properly designed, would likely have caused a trespass. Without such evidence, the County could not be held liable under this theory. *Compare Horne v. City of Charlotte*, 41 N.C. App. 491, 493-94, 255 S.E.2d 290, 292 (1979) (municipality was liable when it hired an independent contractor to remove trash and weeds from plaintiff's property, a contract requiring a trespass).

[8] Finally, Coastal contends, without citing any North Carolina authority, that the County can be held liable if it had notice that the contractors were violating a statute, such as the UDPA. Without deciding whether this theory applies in North Carolina, we hold that it is unavailable under the circumstances of this case. Our General Assembly has specified in the UDPA the duties owed by the party financially responsible for the excavation and by the party performing the excavation. Application of Coastal's reasoning would impose on the party financially responsible additional duties not specified in the statute and would disrupt the allocation provided for in the UDPA. We decline to do so without indication that this approach is consistent with the intent of the General Assembly.

### Claims Against Kure Beach and Carolina Beach
### Based on Damage to Coastal's System

[9] Coastal attempts to hold Kure Beach and Carolina Beach vicariously liable for the acts of the County and its contractors. Although Coastal argues that the towns are liable for the County's actions because they will be the beneficiaries of the system, it has failed to cite any supporting authority for this argument. Our appellate rules require that arguments of appellants "contain citations of the authorities upon which the appellant relies." N.C.R. App. P. 28(b)(6). Coastal has, therefore, abandoned this argument. *State v. Thompson*, 110 N.C. App. 217, 222, 429 S.E.2d 590, 592 (1993).

With respect to *respondeat superior* liability, as discussed earlier, the critical element of an agency relationship " 'is the right of control.' " *Wyatt*, 151 N.C. App. at 166, 565 S.E.2d at 710 (quoting *Williamson*, 952 F. Supp. at 498). Coastal has failed to offer any evidence that the towns had a "right to control" the contractors. With respect to the contractors, neither Kure Beach nor Carolina Beach had a contract with either Loving or Atlantic. Coastal's brief refers repeatedly to the liability of the "employer" of a contractor for the acts of the contractor, but provides no evidence that either town employed the contractors. Coastal has pointed to no evidence that the towns have any legal right, apart from their police power, to require the contractors to do anything.

Coastal has instead relied on the towns' participation in meetings with the contractors and expressions of concern as to problems arising out of the construction. For example, Coastal cites a letter from Kure Beach Public Works to the County's engineer in which he included a "quick list of concerns that we came up with yesterday from the Kure Beach project[,]" including problems such as debris and sand washing into ditches and the need to seed areas with grass. This letter, the towns' monitoring of the construction, and the towns' participation in meetings do not show that the towns had the right to control the means and the details of the construction project, but rather that the towns were performing precisely the role required of a town in connection with a major construction project impacting that town. As the cases discussed in connection with the County's liability demonstrate, this degree of watchfulness does not give rise to a principal-agent relationship.

The trial court properly granted summary judgment to the towns based on damage arising from the design and construction of the water and sewer system.

### Claims Against Carolina Beach Based on its Wells

[10] Coastal has also asserted a nuisance claim against Carolina Beach, alleging that two of Carolina Beach's wells make "unreasonable use" of an underground stream that is also the source for Coastal's wells. Carolina Beach's sole argument in support of the trial court's summary judgment order as to the nuisance claim is that Coastal failed to plead in its complaint and to produce sufficient evidence in opposition to summary judgment that it had the necessary property interest to assert a nuisance claim.

A party, such as Coastal, asserting a riparian right "must show that [it] is a riparian proprietor or that in some way [it] has acquired riparian rights in the stream." *Durham v. Cotton Mills*, 141 N.C. 615, 627, 54 S.E. 453, 457 (1906). "[A] riparian proprietor is entitled to the natural flow of a stream running through or along his land in its accustomed channel, undiminished in quantity and unimpaired in quality, except as may be occasioned by the reasonable use of the water by other like proprietors." *Smith v. Town of Morganton*, 187 N.C. 801, 803, 123 S.E. 88, 89 (1924).

Coastal alleged in its complaint that it owned the wells and attached to the complaint various deeds and other documents conveying the real property and easements making up the waterworks that now form Coastal's water system. Although Coastal has not submitted evidence pinpointing the location of its wells in relation to the deeds, when the evidence is viewed in the light most favorable to Coastal, the documents expressing an intent to convey ownership of all of the assets of the waterworks, specifically including the wells, are sufficient to give rise to a genuine issue of material fact as to whether Coastal has the necessary property interest to assert a nuisance claim.

Since the sole issue raised before this Court is Coastal's property interest, we hold that the trial court erred in granting summary judgment as to this claim. We express no opinion regarding any of the other elements of the claim.

### Claims Against Loving

[11] Although Coastal assigned error to the trial court's grant of summary judgment to Loving with respect to the wrongful interference with easement claim, Coastal has not argued this issue separately as to Loving.[3] We have already held that the trial court properly granted

---

3. Coastal has not assigned error regarding the entry of judgment for Loving as to the nuisance claim.

summary judgment as to Coastal's argument that the present location of the water and sewer system interferes with its water system. We also note, however, that Coastal has cited no authority supporting such a claim against Loving, which has no ongoing interest in the water and sewer system. With respect to the damage to Coastal's water lines during Loving's construction, Coastal has made no argument and cites no authority why this conduct supports a claim for wrongful interference with easement as opposed to trespass to chattels and negligence, the claims that are still pending against Loving. In the absence of any argument or authority, we decline to set aside the trial court's grant of summary judgment for Loving as to the claim for wrongful interference with easement.

Affirmed in part and reversed in part.

Judges McCULLOUGH and HUDSON concur.