NO. COA13-691

NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

LAWYERS MUTUAL LIABILITY INSURANCE
COMPANY OF NORTH CAROLINA,
  Plaintiff,

  v.          Wake County
             No. 11 CVS 16860
SUE E. MAKO; R. SCOTT GIRDWOOD;
and MAKO & ASSOCIATES, P.A.,
  Defendants.


Appeal by defendants from order entered 18 December 2012 by Judge Lucy N. Inman in Wake County Superior Court. Heard in the Court of Appeals 5 November 2013.

> *Poyner Spruill LLP, by T. Richard Kane and Andrew H. Erteschik, for plaintiff-appellee.*

> *Girdwood & Williams, PLLC, by Benjamin D. Williams, for defendant-appellants.*


BRYANT, Judge.

As our General Statutes hold that a cashier's check is to be treated in the same fashion as a traditional check, a cashier's check must undergo a provisional settlement period before it can be deemed irrevocably credited by the payor bank. Where there is no issue as to any material fact regarding our

statutory language concerning the processing of a cashier's check, summary judgment is appropriate.

Defendants Sue E. Mako; R. Scott Girdwood; and Mako & Associates, P.A. ("defendants") had a professional liability insurance policy ("the policy") with plaintiff Lawyers Mutual Liability Insurance Company ("Lawyers Mutual") for the period of 7 August 2011 through 7 August 2012. On 17 June 2011, defendants received an email from a potential client, Oliver Burkeman ("Burkeman"). Burkeman contacted defendants seeking assistance in collecting $350,000.00 allegedly owed him by his former employer, Crest Iron and Steel; Burkeman claimed the money was part of a workers' compensation claim settlement.

On 23 June 2011, Burkeman sent a signed Fee Agreement to defendants, and defendants agreed to represent Burkeman in collecting his settlement money. Defendants would assess Burkeman a contingent fee of 20% of any amount obtained.

On 11 July 2011, defendants received an initial check for $175,000.00 from Crest Iron and Steel in partial payment of the amount purportedly owed to Burkeman. Defendants deposited the check into their trust account on 12 July 2011. Although defendants had a policy of holding funds for ten days prior to distribution, the policy was not enforced and distribution of

the funds was authorized that same day. Burkeman was to collect $140,000.00 after defendants' contingent fee of $35,000.00 had been deducted from the $175,000.00 check. Defendants attempted to wire $140,000.00 to a bank account in Japan per Burkeman's instructions. However, due to an error in account information, the wire was unsuccessful and defendants could not collect their contingent fee.[1]

On 14 July 2011, defendants received a second check for $175,000.00 from Crest Iron and Steel in partial payment of the amount purportedly owed to Burkeman. On 15 July 2011, defendants deposited the second check and, again not abiding by their policy of holding funds for ten days, immediately wired $140,000.00 to the Japanese bank account. Defendants collected from the second check a $35,000.00 contingent fee which was deposited to defendants' trust account. Also on 15 July 2011, defendants were notified by RBC Bank that the first of the two checks was being returned unpaid. On 18 July 2011, RBC Bank notified defendants that the second check was also being returned unpaid. Both checks were determined to be fraudulent.

---

[1] Defendants charged Burkeman a 20% contingent fee for any amount recovered; as such, defendants' contingent fee for assisting Burkeman with the first purported settlement check of $175,000.00 was $35,000.00. Defendants would likewise assess a contingent fee of $35,000.00 for assisting Burkeman in collecting the second purported settlement check of $175,000.00.

As a result, defendants suffered a total loss of $175,000.00 from their client trust account.

On 1 November 2011, defendants filed a claim with Lawyers Mutual to recover $175,000.00 in funds lost as a result of the fraud. Lawyers Mutual filed a complaint for declaratory relief on 2 November 2011. On 12 December 2011, Lawyers Mutual filed a motion for summary judgment but withdrew that motion on 21 December 2011. Lawyers Mutual then filed a motion for judgment on the pleadings that same day, but the motion was not heard. Defendants filed a motion for summary judgment on 23 December 2011, which was denied by the trial court on 3 April 2012.

On 30 May 2012, Lawyers Mutual filed an amended complaint for declaratory relief. Lawyers Mutual then filed for summary judgment on 15 October 2012. On 18 December 2012, the trial court granted Lawyers Mutual's motion for summary judgment determining in relevant part that: "It is undisputed that the funds at issue in this action were lost at a time when the deposit had not yet 'cleared' Defendants' trust account at the depositary bank. The court concludes that the phrase 'irrevocably credited' in the insurance policy precludes coverage of Defendants' claim of loss." Defendants appeal.

_____

On appeal, defendants argue that the trial court erred in granting Lawyers Mutual's motion for summary judgment. We disagree.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2013). Thus, this Court must "determine, on the basis of the materials presented to the trial court, whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law." *Coastal Plains Utils., Inc. v. New Hanover Cnty.*, 166 N.C. App. 333, 340, 601 S.E.2d 915, 920 (2004) (citation omitted). We review the granting of summary judgment *de novo*. *Va. Elec. & Power Co. v. Tillett*, 80 N.C. App. 383, 385, 343 S.E.2d 188, 190—91 (1986).

Defendants contend that the trial court erred in granting summary judgment to Lawyers Mutual because, under Provision I., Section (r) of their insurance policy with Lawyers Mutual, the term "irrevocably credited" is ambiguous. Specifically, defendants argue that they understood "irrevocably credited" to

mean that the policy would cover losses involving forged cashier's checks because they assumed that a cashier's check is, like cash, irrevocably credited upon deposit. Defendants' insurance policy provides in part that:

> I.  Exclusions . . . [T]his policy does not afford to any **Insured** any coverage or benefits whatsoever, including, but not limited to, any right to any defense, with respect to:
>
>  . . .
>
> (r) any **claim**, or any theory of liability asserted in a **suit,** based in whole or in any part upon disbursement by any **Insured**, or any employee or agent of any **Insured**, of funds, checks or other similar instruments deposited to a trust, escrow or other similar account unless such deposit is irrevocably credited to such account[.]

Pursuant to N.C. Gen. Stat. § 25-3-104(f), "'Check' means (i) a draft, other than a documentary draft, payable on demand and drawn on a bank or (ii) a cashier's check or teller's check." N.C.G.S. § 25-3-104(f) (2013); *Thompson v. First Citizens Bank & Trust Co*., 151 N.C. App. 704, 707, 567 S.E.2d 184, 187 (2002) ("Negotiable instruments, also called simply "instruments," may include, *e.g.,* a personal check, cashier's check, traveler's check, or CD [pursuant to] N.C.G.S. § 25-3-104."). A settlement agreement to pay a negotiable instrument can be either provisional or final. N.C. Gen. Stat. § 25-4-

104(11) (2013). A negotiable instrument may also be referred to as an "item." *Id.* § 25-4-104(9).

> An item is finally paid by a payor bank when the bank has first done any of the following:
>
> (1) Paid the item in cash;
>
> (2) Settled for the item without having a right to revoke the settlement under statute, clearing-house rule, or agreement; or
>
> (3) Made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing-house rule, or agreement.

*Id.* § 25-4-213(a). A payor bank may revoke a provisional settlement prior to making final payment and before its midnight deadline by returning the item. *Id.* § 25-4-301(a).

Defendants argue that "irrevocably credited" is ambiguous because a cashier's check differs from a traditional check. Defendants further argue that it was their understanding that a cashier's check was as good as cash. Defendants' argument is without merit, as pursuant to N.C.G.S. § 25-3-104(f), a cashier's check is treated the same as a traditional check. A traditional check cannot be deemed fully credited until its provisional settlement period has elapsed without action by the bank to reject the check; the same is true for a cashier's

check. Therefore, the provisional settlement period that accompanies traditional checks must also apply to cashier's checks. As such, Lawyers Mutual's policy's use of "irrevocably credited" refers to the statutory provisions which govern a check's acceptance or rejection during its provisional settlement period. Accordingly, Provision I., Section (r) of Lawyers Mutual's insurance policy would not protect defendants unless defendants deposited a check and waited until the provisional settlement period had finally elapsed to ensure that the check had been accepted and fully credited by the payor bank, regardless of whether it was a traditional check or cashier's check. Therefore, the trial court did not err in granting Lawyers Mutual's motion for summary judgment.

Affirmed.

Judges McGEE and STROUD concur.